# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:                                            )
S.M. ACQUISITION CO., d/b/a                       )
STYLEMASTER, INC.,                                )
                          Debtor,                 )
                                                  )
MATRIX IV, INC.,                                  )
                          Appellant,              )        No. 05 C 7076
                                                  )
              v.                                  )
                                                  )
AMERICAN NATIONAL BANK AND                        )
TRUST COMPANY OF CHICAGO,                         )
                          Appellee.               )
                                                  )

## MEMORANDUM ORDER AND OPINION

Matrix IV, Inc. ("Matrix") appeals several decisions of the United States Bankruptcy

Court for the Northern District of Illinois regarding the equitable subordination and

recharacterization affirmative defenses it asserted in the underlying adversary proceeding.

Specifically, Matrix claims the bankruptcy court erred by (1) ordering it on November 14, 2002

to file a more definite statement setting forth facts in support of its affirmative defense; (2)

striking those defenses pursuant to Rule 12(f) on December 20, 2002; and (3) entering an

October 31, 2005 memorandum inconsistent with our remand order of September 12, 2005.  For

the reasons set forth below, we reverse the dismissal of the recharacterization defense and

remand the matter to the bankruptcy court for consideration of that particular affirmative

defense.  We affirm the bankruptcy court's order striking the equitable subordination defense.

# PROCEDURAL BACKGROUND[1]

S.M. Acquisition Co., d/b/a Stylemaster, Inc. ("Stylemaster") filed a petition for bankruptcy relief under Chapter 11 on March 18, 2002. American National Bank and Trust Company of Chicago (the "Bank") brought a related adversary proceeding against Matrix in which the Bank sought a declaration that its lien on certain Stylemaster property was superior to the liens asserted by Matrix. On August 4, 2003, following a bench trial, the bankruptcy court entered judgment in the Bank's favor. *See In re S.M. Acquisition Co.*, 296 B.R. 452 (Bankr. N.D. Ill. 2003) ("*Stylemaster I*"). Matrix appealed that judgment to our court, as well as the bankruptcy court's earlier decision to strike Matrix's eighth affirmative defense. In an April 29, 2004 order, we remanded the action to the bankruptcy court on a specific issue and refrained from ruling on other arguments raised in that appeal. *See In re S.M. Acquisition Co.*, No. 03 C 7072, 2004 WL 1151575 (N.D. Ill. April 29, 2004) ("*Stylemaster II*"). On January 13, 2005, the bankruptcy court issued additional findings of fact and conclusions of law supporting its original judgment in the Bank's favor. *See In re S.M. Acquisition Co.*, 319 B.R. 553 (Bankr. N.D. Ill. 2005) ("*Stylemaster III*").

Matrix then appealed the bankruptcy court's findings and conclusions upon the remand. By order of September 12, 2005, we affirmed the bankruptcy court's original and additional findings and conclusions, as well as challenged evidentiary and discovery rulings. *See In re S.M. Acquisition Co.*, Nos. 03 C 7072, 05 C 1037, slip op. at 2, 36-37 (N.D. Ill. Sept. 12, 2005) ("*Stylemaster IV*"). We also remanded the case to the bankruptcy court for the limited purpose

---

[1]Although we discuss particular facts as needed to address the issues below, we assume general familiarity with the facts and history of this case, which are further described in our September 12, 2005 order. *See Stylemaster IV*, Nos. 03 C 7072, 05 C 1037, slip op. at 2-9.

of entering a memorandum opinion and order on Matrix's eighth affirmative defense. *Id.* We did so because the bankruptcy court stated in its January 13, 2005 order that it prepared a memorandum opinion in April 2003 on that issue, but no opinion had been handed down. *See Stylemaster III*, 319 B.R. at 555 n.2. On October 31, 2005, the bankruptcy court entered its memorandum, concluding that Matrix's equitable subordination and recharacterization affirmative defenses were legally insufficient and dismissing them with prejudice. *See In re S.M. Acquisition Co.*, 332 B.R. 346, 356-357 (Bankr. N.D. Ill. 2005) ("*Stylemaster V*").

At this juncture, Matrix objects to the bankruptcy court's orders requiring it to file a more definite statement of facts supporting these two affirmative defenses and its dismissal of those defenses. (Matrix Brief at 2, 12-13.) *See Stylemaster V*, 332 B.R. at 356-357; *In re S.M. Acquisition Co.*, No. 02 B 10723, No. 02 A 00283, Tr. of Excerpt (B) of Proc. at 10-11 (Bankr. N.D. Ill. Dec. 20, 2002) (orally granting the Bank's motion to strike eighth affirmative defense) [Adversary Proc. Docket No. 229]; *In re S.M. Acquisition Co.*, No. 02 B 10723, No. 02 A 00283, Minute Order (Bankr. N.D. Ill. Nov. 14, 2002) (ordering Matrix to "file more definite statement of facts . . . by November 18, 2002") (hereinafter "MDS Order") [Adversary Proc. Docket No. 116]. Matrix further claims that the court exceeded our September 12 mandate by issuing an opinion written (at least in part) *after* April 2003 and relying on evidentiary support outside the pleadings. (Matrix Brief at 2, 14-18.) The Bank opposes Matrix's appeal and defends the bankruptcy court's decisions.

## ANALYSIS

In a bankruptcy appeal, we examine the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *See Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th

Cir. 2003); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *United Air Lines, Inc. v. HSBC Bank USA*, 322 B.R. 347, 350 (N.D. Ill. 2005); *Outboard Marine Corp. v. Moglia*, 278 B.R. 778, 782 (N.D. Ill. 2002). *De novo* review requires us to make an independent examination of the bankruptcy court's judgment without giving deference to that court's analysis or conclusions. We also review *de novo* mixed questions of fact and law. *See In re Rovell*, 232 B.R. 381, 386 (N.D. Ill. 1998). With these standards in mind, we consider each of Matrix's arguments in turn.

A.      The Bankruptcy Court's MDS Order

Matrix first articulated its equitable subordination defense on September 12, 2002 in response to the Bank's motion for summary judgment in the underlying adversary proceeding. (*See* Matrix Memo. in Resp. & Obj. to Mot. Summ. J. ("MSJ") ¶¶ 26-32 [Adversary Proc. Docket No. 58].) At that time, Matrix argued that its tool and die lien was superior to the Bank's security interest in the relevant Stylemaster molds. (*Id.* ¶¶ 1-6.) Moreover, it alleged that the Bank colluded "with the fraudulent conduct of Stylemaster" and its president, Martha Williams, leading to Matrix's crippling losses. (*Id.* ¶ 31.) As further support for its argument, Matrix claimed that the Bank, among other things: (1) extended credit to Stylemaster despite its insolvency; (2) intentionally refused to act on its knowledge of Matrix liens; (3) entered into a "sweetheart settlement" with Stylemaster guarantors and amended that agreement to impair the equitable subordination defense; and (4) enlisted its counsel in efforts to "supercede Matrix'[s] liens and obfuscat[e]" collusive acts. (*Id.* ¶ 21.) Based on this "collusive conduct by the Bank," Matrix requested "an order equitably subordinating any interest the Bank may have in the Stylemaster molds in Matrix'[s] possession" and a denial of the Bank's motion for summary judgment. (*Id.* ¶ 32.)

The bankruptcy court subsequently denied the parties' cross-motions for summary judgment, and Matrix initiated additional discovery to investigate and support its equitable subordination argument. In response, the Bank filed a motion *in limine* on November 12, 2002, correctly observing that Matrix had not formally plead this affirmative defense and seeking to bar the related discovery, which it claimed Matrix underhandedly served to further its separate RICO action against Stylemaster. (*See* Bank Mot. *In Limine* ¶¶ 3-5, 10 [Adversary Proc. Docket No. 112].)

As a result, on November 14, the bankruptcy court ordered Matrix "to file [the] affirmative defense of equitable subordination asserted by it in defense of [the Bank's] summary judgment motion." *See* MDS Order. The court also ordered Matrix to file a more definite statement of facts in support of that affirmative defense by November 18, 2002. *Id.* In light of the impending formal addition of the affirmative defense, the court informed the parties that the Bank's motion *in limine* would be treated as a motion to strike and set a briefing schedule. *Id.* Matrix complied with the court's order, filing its affirmative defense[2] and more definite statement of facts on November 18.

As a legal conclusion, we review the bankruptcy court's MDS Order *de novo*. A court may order a party to file a more definite statement where the original pleading is "so vague or ambiguous that [the opposing] party cannot reasonably be required to frame" a response and thus, the claim does not satisfy the liberal notice pleading requirement of Rule 8(a). Fed. R. Civ. P. 12(e) (applicable to adversary proceedings under Fed. R. Bankr. P. 7012(b)). In addition, a

---

[2]According to Matrix, it also added a recharacterization affirmative defense. Because the bankruptcy court addressed that issue in its October 31, 2005 memorandum, we review the striking of that defense as well.

court may require a more definite statement for claims alleging fraud or mistake, which must be pled with particularity. Fed. R. Civ. P. 9(b). Although Rule 12(e) issues are typically raised by motion, a court has the discretion to order a more definite statement *sua sponte* with appropriate notice and as needed, particularly where designed to "keep the case moving." *See, e.g., Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

Matrix contends that it adequately pled its equitable subordination affirmative defense, which had been discussed in the summary judgment briefing. It also objects to the bankruptcy court's *sua sponte* MDS Order, which required a more definite statement even *before* reviewing the affirmative defense pleading. (Matrix Brief at 12-14.) The Bank alleges that because the equitable subordination defense necessitates a showing of inequitable conduct, Matrix was obligated to plead with specificity. (Bank Resp. at 6.)

Although the bankruptcy court's treatment of the eighth affirmative defense and related motions may seem unorthodox, we conclude that it did not err in requiring a more definite statement. First, Matrix claimed that the Bank engaged in concerted, fraudulent conduct with Stylemaster. (Matrix Memo. in Resp. & Obj. to MSJ ¶ 31.) By expressly alleging fraud – and at the very least claiming that the Bank intentionally assisted Stylemaster's fraud – Matrix triggered Rule 9(b)'s pleading requirement.[3] Second, at the time the court issued the MDS

---

[3]We disagree with the Bank's blanket statement that "when the asserted defense is based on purported inequitable conduct," the defendant must satisfy Rule 9(b). (Bank Resp. at 6.) The cases cited by the Bank are patent infringement cases and thus, readily distinguishable. *See Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.*, 14 F. Supp. 2d 1046, 1049 (N.D. Ill. 1998) (observing that inequitable conduct in that context resides in failure to disclose information or submission of false information); *see also Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (requiring plaintiff to plead with particularity because it alleged fraudulent conduct). Courts may require parties to satisfy Rule 9(b) *if* they allege fraud or misrepresentation as the inequitable conduct underlying the equitable subordination defense, as in this case. *See In re*

Order, discovery was scheduled to conclude in less than one month, on December 10, and trial was set for January 13, 2003. Rather than run the risk that Matrix would file an affirmative defense lacking sufficient specificity, thus delaying the proceedings, the bankruptcy court ordered a more definite statement to be filed concurrently with the defense, essentially to "keep the case moving." *Bennett*, 153 F.3d at 518. Under these circumstances, we hold that the MDS Order was warranted to efficiently manage the case, preserve judicial resources and avoid wasting time.

B. *The Bankruptcy Court's Order Striking Eighth Affirmative Defense*

Having found that the bankruptcy court appropriately issued the MDS Order, we review *de novo* its decision to grant the Bank's motion to strike.[4] A motion to strike pursuant to Rule 12(f) is the appropriate means of removing "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.,* 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Motions to strike affirmative defenses are generally disfavored because of their potential to delay proceedings. *U.S. v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir. 1975) (citations omitted). Such a motion should not be granted unless the defense is "patently defective" on the face of the pleadings. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 833 F.2d 1286, 1294 (7th Cir. 1989). Defenses generally "will not

---

*Universal Foundry Co.*, 163 B.R. 528, 539-541 (E.D. Wis. 1993) (affirming bankruptcy court's conclusion that trustee failed to sufficiently plead "the circumstances constituting fraud in connection with its equitable subordination claim"). Contrary to the Bank's proposition, it appears that non-fraudulent inequitable conduct need not be plead with specificity in support of an equitable subordination claim.

[4]Although the bankruptcy court indicated in the MDS Order that it would treat the Bank's motion *in limine* as a motion to strike, the Bank formally filed a motion to strike on November 21, 2002. That motion was fully briefed by the parties, who presented oral argument before Judge Schmetterer on December 20, 2002.

be struck if they are sufficient as a matter of law or if they present questions of law or fact." *Id.* at 1294. Nonetheless, if the defendant fails to "include either direct or inferential allegations respecting all materials elements of the claim," the court may strike the defense. *Surface Shields, Inc. v. Poly-Tak Prot. Sys., Inc.*, 213 F.R.D. 307, 307 (N.D. Ill. 2003) (*quoting MAN Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999)). In this way, a motion to strike can be a useful means of eliminating "unnecessary clutter" from a case. *Heller Fin., Inc.,* 833 F.2d at 1294.

We employ a three-part test when evaluating affirmative defenses challenged on a Rule 12(f) motion. *Builders Bank v. First Bank & Trust Co. of Ill.*, No. 03 C 4959, 2004 WL 626827, at * 2 (N.D. Ill. Mar. 25, 2004); *Surface Shields, Inc.*, 213 F.R.D. at 308; *see Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982). First, we assess whether the matter constitutes an affirmative defense. Second, we consider whether the defense has been adequately pled pursuant to the requirements of Rules 8 and 9. Finally, we determine whether the affirmative defense withstands a Rule 12(b)(6) challenge. In other words, we will strike the defense only if the defendant cannot prove any set of facts in support thereof that would defeat the complaint. *See Yash Raj Films (USA) Inc. v. Atlantic Video*, No. 03 C 7069, 2004 WL 1200184, at *2(N.D. Ill. May 28, 2004); *Builders Bank*, 2004 WL 626827, at *2; *Surface Shields, Inc.*, 213 F.R.D. at 308.

Here, the parties do not dispute that recharacterization and equitable subordination are affirmative defenses. Nor has the Bank alleged that Matrix failed to plead recharacterization and

equitable subordination with particularity under Rule 9(b).[5]  Rather, the question before us is whether Matrix's eighth affirmative defense – including the more definite statement of facts – set forth any defense that, if true, would entitle it to relief.

    *1.    Equitable Subordination*

In the Seventh Circuit, as in other circuits, we utilize the three-part test set forth in *In re Mobile Steel Co.* to evaluate claims for equitable subordination.  *In re Lifschultz Fast Freight*, 132 F.3d 339, 344-345 (7th Cir. 1997); *In re Kreisler*, 331 B.R. 364, 381-382 (Bankr. N.D. Ill. 2005); *In re Joy Recovery Tech. Co.*, 286 B.R. 54, 83-84 (Bankr. N.D. Ill. 2002); *see In re Mobile Steel Co.*, 563 F.2d 692, 701 (5th Cir. 1972).  Equitable subordination is appropriate only where: "(1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to other creditors or conferred some unfair advantage on the claimant; and (3) equitable subordination of the claim is not inconsistent with other provisions of the Bankruptcy Code."[6]  *In re Kreisler*, 331 B.R. at 381; *see In re Lifschultz Fast Freight*, 132 F.3d at 344.  Although certain exceptions exist – none of which are relevant here – "inequitable conduct is a requirement where the claims of secured creditors are being challenged."  *In re Kreisler*, 331 B.R. at 382; *see also In re Lifschultz Fast Freight*, 132 F.3d at 348-349 (reiterating that

---

    [5]Although the Bank alleges that Matrix was required to plead the defenses with particularity, the bankruptcy court had already required it to do so.  The Bank does not seem to argue that Matrix failed to plead with sufficient detail; rather, it contends that even with the specificity present in the more definite statement, Matrix failed to state a defense upon which relief could be granted.  (*See* Bank Reply in Support of Mot. to Strike at 4-5 [Adversary Proc. Docket No. 170]; *see also* Bank Resp. at 9 (noting that Matrix could not plead facts "that would support recharacterization or equitable subordination").)

    [6]Satisfaction of the three-prong test does not necessarily lead to equitable subordination "but merely means that a court is *permitted* to take such action" in its discretion.  *In re Octagon Roofing*, 157 B.R. 852, 857 (N.D. Ill. 1993).

-9-

"inequitable conduct is still the general rule for equitable subordination"); *In re Aluminum Mills Corp.*, 132 B.R. 869, 894 (Bankr. N.D. Ill. 1991).

The level of inequitable conduct necessary to warrant equitable subordination, however, "depends on the nature of the legal relationship between the debtor and the creditor whose claim is subject to attack." *In re Kids Creek Partners, L.P. v. Leighton Holdsings, Ltd.*, 200 B.R. 996, 1014 (Bankr. N.D. Ill. 1996); *see In re Kreisler*, 331 B.R. at 382; *Herzog v. Leighton Holdings, Ltd.*, 239 B.R. 497, 504-505 (N.D. Ill. 1999); *In re Aluminum Mills Corp.*, 132 B.R. at 894. Indeed, "the dealings of an insider or fiduciary of the debtor are subject to a higher level of scrutiny than the dealings of a non-insider third party." *In re Kreisler*, 331 B.R. at 382; *Herzog*, 239 B.R. at 504-505. When evaluating the claims of an insider, "the standard is unfair dealing," and evidence of unfair conduct requires the insider to then "demonstrate its good faith and fairness." *In re Kreisler*, 331 B.R. at 382. A court may grant equitable subordination if the claimant is not an insider or fiduciary, but only if the claimant's misconduct is "much more egregious." *In re Kids Creek Partners, L.P.*, 200 B.R. at 1015; *In re Aluminum Mills Corp.*, 132 B.R. at 896. With these basic principles in mind, we consider whether Matrix sufficiently plead the Bank's alleged insider status.

a. *Insider Status*

The Bankruptcy Code, in pertinent part, provides that the insider of a debtor corporation may be either a director, an officer or "another person in control of the debtor." 11 U.S.C. § 101(31)(B). Financial lending institutions are generally not considered insiders or fiduciaries of

their borrowers.[7]  *In re Kids Creek Partners, L.P.*, 200 B.R. at 1015-1016; *In re K Town, Inc.*, 171 B.R. 313, 319-320 (Bankr. N.D. Ill. 1994); *In re Aluminum Mills Corp.*, 132 B.R. at 894. "An exception to this general rule exists, however, when the lending institution exerts control over a debtor," thus falling within the statutory definition of an insider.  *In re Kids Creek Partners, L.P.*, 200 B.R. at 1015.

As Matrix observes, there can be two types of control: de jure and de facto.  *Id.*  While a structural analysis of the debtor may reveal whether a lender has de jure control, we consider the extent of the lender's actual, managerial control when assessing allegations of de facto control. *Id.*  Nonetheless, "control does not exist simply because bargaining power was greatly skewed in favor of the lender" or because the lender and debtor share a close relationship.  *Id.* at 1016; *see In re K Town, Inc.*, 171 B.R. at 320; *In re Aluminum Mills Corp.*, 132 B.R. at 894.  Rather, the lender's control "must be so overwhelming that there must be, to some extent, a merger of identity" or a "domination of [the debtor's] will."  *In re Kids Creek Partners, L.P.*, 200 B.R. at 1016 (internal quotations omitted).  For example, the lender must "exercise sufficient authority ... so as to dictate corporate policy and the disposition of assets."  *In re K Town, Inc.*, 171 B.R. at 320; *In re Aluminum Mills Corp.*, 132 B.R. at 894; *see CSY Liquidating Corp. v. Harris Trust & Sav. Bank*, No. 96 C 1216, 1998 WL 157065, at *17 (N.D. Ill. Mar. 31, 1998) (finding no de facto control where lender did not select officers or directors of debtor and let it act autonomously).

---

[7]The parties do not seem to draw a distinction between the terms "insider" and "fiduciary," or the caselaw evaluating such claims.  As Matrix alleged only that the Bank was an insider, we shall use that term to evaluate the Bank's relationship with Stylemaster. Nonetheless, we acknowledge that the analysis for both insider and fiduciary relationships appears similar.

In its eighth affirmative defense, and as argued in its opposition to the Bank's motion to strike, Matrix claims that the Bank was an insider of Stylemaster due to its equity interests in Stylemaster and because it exerted managerial control over Stylemaster's operations. Among other things, Matrix alleges that pursuant to a Stock Pledge Agreement: (a) Stylemaster's three owners (Williams, Bailes and DePaul, collectively, "the Owners") granted the Bank a collateral interest in all Stylemaster stock, including "the right[s], upon default, to exercise all voting powers," to receive cash dividends, to sell or transfer the collateral, and to alter, surrender or release the security; (b) Stylemaster and the Owners agreed not to encumber or otherwise materially impair the value of the Bank's collateral; and © the Bank received the right to "hold all warrants, other rights and all properties generated as a result of any reorganization." (MDS ¶ 35.) Moreover, Stylemaster and the Owners "severely limit[ed] the type of investment loans and advances permitted, restricting various kinds of payments to stockholders, prohibiting mergers, consolidations and sale of Stylemaster" or its real property. (*Id.* ¶ 35(g).)

Matrix claims that the Bank obtained further incremental control over Stylemaster in connection with a November 30, 2001 amendment to the existing credit facility. At that time, the Bank required that: (a) "all payments from Stylemaster customers go into a lockbox," including payments owed to Matrix, which had previously been exempted from such treatment; (b) "the establishment of a 'cash collateral account' for customer payments; and © delivery of monthly and weekly financial reports. (MDS ¶ 59.) According to Matrix, the Bank declared Stylemaster in default on January 23, 2002 and tightened its grip over the failing company, to the detriment of other creditors. (*Id.* ¶¶ 60-71.) For example, "the Bank directed and prohibited Stylemaster from paying multiple vendors, including Matrix, and monitored all payments made

by Stylemaster." (*Id.* ¶ 64.) Matrix specifically alleges that the Bank authorized payments to itself and certain of its customers, including Duraco, another mold processor currently providing products to Stylemaster's successor. (*Id.* ¶ 65.)

After closely reviewing Matrix's more definite statement of facts ("MDS"), and drawing all inferences in the light most favorable to it, we conclude that Matrix sufficiently alleged that the Bank was a Stylemaster insider. Matrix alleges that the Bank obtained a controlling stock interest in Stylemaster upon its default (which according to the MDS, occurred as early as November 1997) and then exercised that authority to closely supervise the introduction of new products into the marketplace (MDS ¶ 46), demand retention of a consultant to review Stylemaster's business plans (*id.* ¶¶ 48-49), and revise its security interest in Stylemaster property to obtain a superior lien in the Matrix molds (*id.* ¶¶ 58-59). Matrix further claims that the Bank continued to fund Stylemaster despite its alleged undercapitalization (*id.* ¶¶ 50, 55) and permitted the debtor to make significant expenditures while knowing that Stylemaster neglected to pay its suppliers (*id.* ¶ 56). Importantly, the Bank exercised its position to gain "unconditional control over Stylemaster's payments to creditors" by establishing a cash collateral account (*id.* ¶ 59 (b)) and to prohibit payments to certain vendors, including Matrix, while authorizing payments to itself and its affiliates (*id.* ¶¶ 64-65). As the bankruptcy court in *In re Aluminum Mills Corporation* observed, a claim of insider status is adequately plead if it describes both "a source of power and alleged instances in which power was exercised," and we discern such allegations in the MDS. 132 B.R. at 895. Although we cannot foretell whether Matrix could ultimately prevail, we also cannot say that Matrix could prove no set of facts in support of its

allegation that the Bank was an insider.[8]

###### b. Inequitable Conduct

Having determined that Matrix sufficiently plead the Bank's insider status, we next determine whether it also alleged inequitable conduct. As mentioned earlier, a party seeking to equitably subordinate the claims of an insider must demonstrate "unfair dealing." *In re Kreisler*, 331 B.R. at 382. Once evidence of unfair dealing has been presented, the burden shifts to the insider to "demonstrate its good faith and fairness" in the pertinent transactions. *Id.* Accordingly, we assess whether Matrix adequately plead "unfair dealing" by the Bank that, if proven and not dispelled by the Bank, could potentially warrant equitable subordination.

"In the context of equitable subordination, the type of conduct that has been considered 'inequitable' generally falls within the following categories: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego." *In re Lifschultz Fast Freight*, 132 F.3d at 344-345 (internal quotations omitted); *see In re Kreisler*, 331 B.R. at 383; *In re Kids Creek Partners, L.P.*, 200 B.R. at 1018. Although insider status and the debtor's undercapitalization are relevant when evaluating the alleged inequitable conduct, neither factor alone is sufficient to warrant

---

[8]In so holding, we disagree with the bankruptcy court's conclusion that "[t]he facts asserted ... did not show that the Bank was an insider ... and Matrix has failed to demonstrate that the Bank is an insider despite extensive discovery taken by it before filing" the MDS. *Stylemaster V*, 332 B.R. at 354. In pleading its affirmative defense, Matrix was not required to "show" or "demonstrate" the Bank's status. At that juncture, and consistent with the standard of review on a motion to strike, Matrix needed only to allege all elements material to its claims. Further, the parties should not have relied on evidence in briefing the motion to strike, and the bankruptcy court should not have considered it (to the extent it may have) in rendering a decision. *See id.* at 354-355. (*See also* Matrix Resp. & Obj. Mot. to Strike Exs. B-D; Matrix Surreply in Opp. Mot. to Strike Ex. A.)

subordination.  *In re Octagon Roofing*, 157 B.R. at 858; *see In re Lifschultz Fast Freight*, 132 F.3d at 349 ("undercapitalization alone without evidence of deception ... or other misconduct, cannot justify equitable subordination of an insider's debt claim"); *In re Kids Creek Partners, L.P.*, 200 B.R. at 1020 ("Undercapitalization may play a role ... because it often accompanies insider misconduct."); *see also In re Autostyle Plastics, Inc.*, 269 F.3d 726, 745 (6th Cir. 2001) (observing that "insider transactions are more closely scrutinized, not because the insider relationship makes them inherently wrong, but because insiders usually have greater opportunities for ... inequitable conduct") (internal quotations omitted).  Indeed, insider claims may be subordinated only if evidence of undercapitalization is combined with proof of other inequitable conduct, such as "fraud, spoliation, mismanagement or faithless stewardship."  *In re Octagon Roofing*, 157 B.R. at 858 (*quoting In re N&D Prop., Inc.*, 54 B.R. 590, 601 (Bankr. N.D. Ga. 1985)).  A less stringent approach "would discourage loans from insiders to companies facing financial difficulty," even though it is insiders who likely have the greatest "motivation to salvage a floundering company."  *Id.* at 858; *see In re Kids Creek Partners, L.P.*, 200 B.R. at 1020.

In this case, Matrix claims that Stylemaster was undercapitalized but fails to sufficiently allege additional inequitable conduct.  As the Bank and the bankruptcy court observed, the sum and substance of Matrix's defense is that the Bank "deliberately ignored the serious financial problems that existed between [Stylemaster] and the Bank," and conducted inadequate due diligence when entering into credit agreements with Stylemaster, thus asserting a priority interest superior to Matrix's lien without first learning of that lien or notifying Matrix.  *Stylemaster V*, 332 B.R. at 354.  (*See also* MDS ¶¶ 13-14, 24-27, 29, 33, 42-43, 57-58; Bank Reply in Support

of Mot. to Strike at 8-11.)  We agree with the bankruptcy court's conclusion that this alleged

behavior, if proven true, would not constitute inequitable conduct on par with "fraud, spoliation,

mismanagement or faithless stewardship."  *In re Octagon Roofing*, 157 B.R. at 858 (internal

citation omitted); *see also In re Aluminum Mills Corp.*, 132 B.R. at 896 (finding claim of

inequitable conduct insufficient where creditor alleged that lender made a loan for an LBO,

knowing it would lead to insolvency, "and then acted strategically ... to maximize its benefits").

Like Bayer, the creditor in *In re Autostyle Plastics, Inc.*, Matrix alleges that the Bank

engaged in inequitable conduct by failing to disclose a security interest obtained through a credit

facility and the scope of that interest.  269 F.3d at 746.  In *In re Autostyle Plastics, Inc.*, the Sixth

Circuit rejected Bayer's claim due to its own lack of due diligence, commenting that a "thorough

examination of [the] credit facility and its security interest – which … were in the public record

– would have revealed" the scope of the asserted interests.  *Id.*  Similarly, we find that under

these circumstances Matrix could not be permitted to burden the Bank with the responsibility of

protecting other creditors.  *See also SRJ Enters., Inc. v. NDC Park Ridge Bank*, 151 B.R. 189,

197-198 (Bankr. N.D. Ill. 1993) (holding that junior creditor could not rely on lender to police

debtor's conduct and that bank's failure to enforce loan agreement in manner that would have

benefitted other creditors was not overreaching).  If anything, the Bank's purportedly inadequate

due diligence put itself at risk; of course, the Bank may assume any business risks it chooses in

extending credit to borrowers.  Even as an insider, the Bank "is free to lend money to [the

debtor], provided [it] does not use [its] corporate position to defraud creditors or take unfair

advantage of them."  *In re Lifschultz Fast Freight*, 132 F.3d at 345 (internal quotations omitted).

Although Matrix initially suggested in the summary judgment briefing that the Bank participated

in Stylemaster's fraud, the MDS contains no allegation that the Bank acted unfairly or used its insider status to deliberately mislead other creditors about the financial position of Stylemaster or its own security interests. Accordingly, Matrix failed to allege inequitable conduct by the Bank that, as a matter of law, could entitle it to the extraordinary remedy of equitable subordination. Because Matrix thus could not prove any set of facts in support of its defense, the bankruptcy court did not err in striking the equitable subordination defense.

 2. *Recharacterization*

Having disposed of the equitable subordination claim, we next consider whether Matrix sufficiently plead a claim for recharacterization of Stylemaster's purported debt to the Bank.[9] As the bankruptcy court correctly stated, "[b]ankruptcy judges are empowered to recharacterize loans under their general equitable powers pursuant to Section 105 of the Bankruptcy Code." *Stylemaster V*, 332 B.R. at 351. Where "a creditor has contributed capital to a debtor in the form of a loan, but the loan has the substance and character of an equity contribution, the court may recharacterize the debt as equity." *In re Kids Creek Partners, L.P. v. Leighton Holdings, Ltd.*, 212 B.R. 898, 931 (Bankr. N.D. Ill. 1997); *see In re Outboard Marine Corp. v. Quantum Indus. Partners, LDC*, No. 02 C 1594, 01 A 0471, 00 B 34705, 2003 WL 21697357, at *3 (N.D. Ill.

---

[9]The Seventh Circuit acknowledges that a claim for equitable subordination is distinct from a cause of action seeking recharacterization, although the concepts are similar. *In re Lifschultz Fast Freight*, 132 F.3d at 345, n.3; *see also In re Autostyle Plastics, Inc.*, 269 F.3d at 748-749 (describing the differences between the two claims); *Stylemaster V*, 332 B.R. at 350-351 (same). Here, neither party discussed the recharacterization claim in their briefs on the motion to strike, nor did the bankruptcy court address the claim in its December 20, 2002 order. However, the bankruptcy court explicitly evaluated the recharacterization claim in its October 31, 2005 *Stylemaster V* decision, and the parties now present the issue on appeal. 332 B.R. at 350-352. Thus, we consider whether Matrix adequately plead recharacterization in the MDS, even though the issue was utterly neglected during the adversary proceeding.

July 22, 2003) (noting that where court recharacterizes debt as equity, "the *effect* is subordination of the claim as a proprietary interest because the corporation repays capital contributions only after satisfying all other obligations of the corporation") (internal quotations omitted). The recharacterization analysis involves a "factual determination of whether or not the asserted debt is in fact a debt or is instead an equity contribution disguised as debt." *In re Outboard Marine Corp.*, 2003 WL 21697357, at *4.

In evaluating the nature of the challenged transaction, courts typically consider the following eleven factors:[10]

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Roth Steel Tube Co. v. C.I.R.*, 800 F.2d 625, 630 (6th Cir. 1986); *In re Autostyle Plastics, Inc.*, 269 F.3d at 749-750; *In re Outboard Marine Corp.*, 2003 WL 21697357, at *5. These factors should be considered within the facts of the particular case, and no single factor is determinative. *In re Autostyle Plastics, Inc.*, 269 F.3d at 750; *In re Outboard Marine Corp.*, 2003 WL 21697357, at *5. All in all, "the more the transaction seems like an armslength deal, the more likely [it] is a loan and not an equity contribution." *In re Outboard Marine Corp.*, 2003 WL 21697357, at *5.

---

[10]At least one court in this district has added two factors to the above: (1) "the ratio of shareholder loans to capital;" and (2) "the amount or degree of shareholder control." *In re Outboard Marine Corp.*, 2003 WL 21697357, at *5.

In this case, Matrix acknowledges that the relevant instruments entered into between Stylemaster and the Bank in November 1997 are entitled "Loan Agreement" and "Security Agreement," and that a UCC Financing Statement was filed three days after the transaction. (MDS ¶ 18.) Based on these documents, "the Bank's loan to Stylemaster was thus a short-term revolving credit arrangement that was structured to finance short term assets or working capital." (*Id.* ¶ 19.) Matrix also alleges that Stylemaster's three owners (and guarantors) entered into a Subordination Agreement, in which they reiterated their agreement "to subordinate all obligations … to the Bank's Senior Indebtedness and the Bank's interests in the Collateral secured by the 1997 Loan Documents." (*Id.* ¶ 34.) The owners executed a Stock Pledge Agreement, pledging all of their stock to the Bank as collateral for the 1997 revolving line of credit. (*Id.* ¶ 35.) Throughout the MDS, Matrix admits that the Bank's advances were memorialized in numerous, formal instruments of indebtedness. Moreover, the MDS alleges that the credit facility was secured with a substantial number of assets, as well as the owners'/guarantors' stock interests. (*Id.* ¶¶ 19, 35.) Although Matrix did not allege facts describing the repayment arrangements, the bankruptcy court observed that the loan documents include a fixed maturity date, fixed interest rates and a definite obligation to repay.[11] *Stylemaster V*, 332 B.R. at 351. Despite Matrix's contention to the contrary in its appellate reply brief, the MDS does not set forth any allegation that the Bank's expectation of repayment would depend solely on the success of Stylemaster's business. (Matrix Reply at 14e.) These facts, as alleged or omitted, undermine Matrix's recharacterization claim. *See In re Autostyle Plastics, Inc.*, 269

---

[11]Because the Bank attached the pertinent loan documents to its claim and incorporated those materials by reference into its complaint, the bankruptcy court was entitled to consider them in assessing the merits of the complaint and Matrix's affirmative defense.

F.3d at 750-751.

In support of its defense, however, Matrix alleged that the Bank obtained an equity interest in, and some degree of managerial control over, Stylemaster. (MDS ¶ 41.) Furthermore, Stylemaster was undercapitalized[12] and unable to secure third party financing, yet used its revolving line of credit to make capital investments rather than fund daily operations. (*Id.* ¶¶ 50, 55-56.) In addition, Matrix claims that the Bank was not required to subordinate its security interests to those of all other creditors. (*See id.* ¶¶ 7, 9, 26, 34, 58.) To the extent Matrix alleges that the Bank became *the* shareholder of Stylemaster and then extended 100% of additional funding, there could be a significant correlation between ownership interests and the proportionate share of certain loans. (*See, e.g., id.* ¶¶ 41, 47.) These allegations, if proven, would weigh heavily in favor of the recharacterization affirmative defense.[13] *In re Autostyle Plastics, Inc.*, 269 F.3d at 751-753. It may very well be that the Bank's relationship with Stylemaster was nothing more than a straightforward commercial lending relationship. But accepting Matrix's allegations as true – as we must in considering a motion to strike – we simply

---

[12]The Bank erroneously insists that some inequitable conduct is required, in addition to undercapitalization, to warrant recharacterization. (Bank Resp. at 16-17.) To the contrary, only equitable subordination requires a showing of misconduct, as it is "an equitable remedy applied against a legitimate creditor who has acted inequitably." *In re Outboard Marine Corp.*, 2003 WL 21697357, at *4. Recharacterization, on the other hand, focuses on whether a legitimate debt actually exists. *In re Autostyle Plastics, Inc.*, 269 F.3d at 751-753. "Indeed, where shareholders have substituted debt for adequate risk capital, their claims are appropriately recast as equity *regardless of satisfaction of the other requirements of equitable subordination*." *Id.* at 749 (emphasis added) (internal quotations omitted).

[13]The MDS does not mention the existence or absence of a sinking fund, though the Bank's response brief suggests that the Bank did not require such a fund. (Bank Resp. at 15.) Nonetheless, this factor does not seem particularly relevant, as secured liens apparently mitigate the need for a sinking fund. *In re Autostyle Plastics, Inc.*, 269 F.3d at 753.

cannot agree with the bankruptcy court that Matrix could prove no set of facts in support of this defense.

## CONCLUSION

For the above stated reasons, we affirm the bankruptcy court's order striking Matrix's equitable subordination affirmative defense but reverse its order striking the recharacterization defense.[14]  We remand the recharacterization claim to the bankruptcy court for further proceedings consistent with this opinion.  It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: August 7, 2006

---

[14]Because we conducted a *de novo* review of the bankruptcy court's decision, we need not substantively address Matrix's argument that the October 31, 2005 order exceeded our September 12, 2005 mandate.  Although the *Stylemaster V* decision refers to material outside the pleadings and developed after the striking of the eighth affirmative defense, we are not convinced that the bankruptcy court actually relied on those materials.  Nonetheless, we agree with Matrix in principle that it would have been improper for the bankruptcy court to rely on such materials in drafting the 2005 order on the Bank's motion to strike.